**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RICKY STEPHENS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1873** |
| **FLORIDA MARINE TRANSPORTERS, INC.** | **SECTION: "H" (4)** |

**ORDER**

Before the Court is Plaintiff, Ricky Stephens, ("Stephens") **Motion to Compel Vessel Inspection (R. Doc. 21)**, seeking an Order from this Court requiring Defendant, Florida Marine Transporters, Inc., ("Florida") to allow Stephens to inspect the vessel involved in this litigation. The motion is opposed (R. Doc. 22), and Florida has filed a supplemental memorandum (R. Doc. 28). The motion was heard by oral argument on Wednesday, May 15, 2013.

## I. Background

This is a personal injury claim brought under the Jones Act, 42 U.S.C. § 688, and the general maritime law of the United States. *See* (R. Doc. 4, p. 1).[1] Stephens, a deckhand and member of the crew of the ship M/V CHRIS PIKE, was working within the scope of his employment when he "was caused to sustain serious injuries to mind and body, but not limited to his back, while removing and replacing hydraulic cylinders." (R. Doc. 1, p. 2). He alleges that his injuries were caused by the negligence of his employer, Florida; he now seeks damages for, *inter alia*, mental and physical pain and suffering, disability, lost wages, maintenance and cure, as well as punitive damages for his "wilful and wanton" conduct. *See id.* at 2-3.

[1]Stephens originally filed this suit on July 18, 2012 (R. Doc. 1), and duly amended his Complaint on July 19, 2012. (R. Doc. 4).

As to the instant motion, Stephens requests an Order from this Court compelling Florida to make the CHRIS PIKE available for Stephens' inspection. The motion is opposed.

## II. Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 34 provides that a party may request another party to "permit the requesting party or its representative to inspect, copy, test, or sample . . . (B) any designated tangible things." Rule 34(a). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A). "The party to whom the request is directed must respond in writing within 30 days after being served." *Id.* at (b)(2)(A). "For each item or category, the response must

either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons." *Id.* at (b)(2)(B).

Rule 37 mandates that upon filing a motion to compel, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* at 37(a)(1).

## III. Analysis

### A. Local Rule 7.4

Stephens argues that on March 8, 2013, he wrote to Florida, requesting that Florida make the CHRIS PIKE available for inspection. (R. Doc. 21-2, p. 1). However, Florida wrote back on March 27, 2013, stating that "there is no identifiable accident and/or incident that is necessarily attributable to any work on the vessel." *Id.* Stephens does not attach a copy of his March 8, 2013 correspondence.

Local Rule 7.4 states that for contested motions, "[i]f the motion requires consideration of facts not in the record, the movant must also file and serve upon opposing counsel a copy of all evidence supporting the motion." *Id.* Although Stephens' failure to attach his actual March 8, 2013 correspondence may indicate that he failed to comply with L.R. 7.4, he does attach Florida's March 27, 2013 response. Therein, Florida references that (1) Stephens wrote Florida on March 8, 2013, and (2) its letter requested the vessel inspection. (R. Doc. 21-2).

The Court finds that these references, conjoined with the fact that Florida does not raise L.R. 7.4 as a defense to compliance with the instant motion, is sufficient to reach the merits of the motion. However, Stephens is cautioned that if future filings fail to comply with the local rules, they may be subject to dismissal.[2]

### B. Appearance at Oral Argument

At oral argument, an individual named "Peter Koeppel" appeared and made arguments

[2]The Court notes that it has already denied one motion for leave to file a response in this case where the filing failed to comply with L.R. 7.5. *See* (R. Doc. 19).

purportedly on behalf of Stephens. However, upon further inspection, the Court noted that Koeppel was not enrolled as an attorney of record in this case at the time of oral argument, nor was there a pending motion to enroll Koeppel as an attorney of record at that time. *See* (R. Doc. 25 n.1). Therefore, Koeppel's statements at oral argument cannot be properly considered in the context of this Motion. However, Stephens' written motion was signed by an attorney of record in this case, and is properly considered.

**C. <u>Merits of Motion</u>**

**1. Physical Inspection of the CHRIS PIKE**

In his written submission, Stephens describes the alleged accident in considerably more detail than in the Complaint. Specifically, he argues that he was injured while attempting to replace two defective ram cylinders on the CHRIS PIKE. (R. Doc. 21-1, p. 2). To replace the cylinders, which were located on the stern of the vessel and protected by metal grating, Stephens and a mechanic first removed the grating, then removed the defective cylinders one at a time by manually lifting them over the bulwark, and then loaded the cylinders onto the mechanic's pickup truck. *See id.* The two men then installed put new cylinders in their place. (R. Doc. 22-1, p. 2).[3] Stephens testified that he believed each cylinder weighed between 500 and 600 pounds. *Id.* at 17-19).

Stephens argues that after he had finished installing the last of the new cylinders, he began complaining of a pulled muscle, which eventually resulted in back surgery. *Id.* at 2-3. Specifically, Stephens testified that he began feeling pain when he laid down to sleep that night. (R. Doc. 22-1, p. 33). Stephens' alleged injuries arose in part from the fact that the cylinders did not contain and hand-holds, making them difficult to grip and maneuver. (R. Doc. 21-1, pp. 2-3). Stephens argues that because the replacement of the cylinders took place on the CHRIS PIKE and may have contributed to his injury, he should be entitled to inspect the vessel. *See id.*

In opposition, Florida concedes that if Stephens actually suffered an injury on the CHRIS PIKE, he would be entitled to inspect the vessel. (R. Doc. 22, pp. 1-2). However, Florida argues

---

[3]Stephens testified that he manually moved three of the cylinders, and that "they had a crane that moved one." (R. Doc. 22-1, p. 25).

that given the mechanics of the removal and replacement of the ram cylinders, Stephens did not actually suffer an injury on the CHRIS PIKE. *See id.* at 2-3. Instead, Florida argues that Stephens' symptoms were "a mere manifestation of symptoms which occurred in the service of the vessel," which he began experiencing *after* he had completed the removal and installation procedure. *Id.* at 3-4. For example, Stephens stated in his deposition that he did not experience any pain when he picked up the grate from the sten of the CHRIS PIKE. *See* (R. Doc. 22-1, pp. 9-11). Thus, Florida argues that inspection of the vessel will not provide any insight into Stephens' claims.

During the hearing, Florida contended that Stephens could not point to a specific activity or time during the cylinder removal or re-installation process at which his injury occurred.[4] Moreover, Florida contended that he first filled out an incident report four days after the hydraulic cylinder incident, complaining about an injury to his groin; only later did he complain about his back injuries.

In his written submission, Stephens attached excerpts from his February 25, 2013 deposition to the record. The Court notes that in the attached excerpts, Florida questioned Stephens continually regarding what activities he performed during the process of removing and replacing the hydraulic cylinder:

> Q. Did you *feel* any pain in your back after doing the activity . . . of picking things up and moving them off the grates?
> A. No, sir.
> . . . .
> Q. Did you *experience* any pain in your back or anywhere else while using the ratchet to loosen the bolts?
> A. No.
> . . . .
> Q. Do you *remember feeling* anything in your back or your groin, any pain when you removed the grate?
> A. No, sir.
> . . . .
> Q. Okay. In the process of walking from the back grating to where you met the mechanic, did you *feel* any pain in your back then?
> A. No, sir.
> Q. How about in your groin?

[4]At that time, Florida did not indicate that there was anything specific that had done to injure his *groin*. Later at oral argument, other pages of the deposition transcript were referenced as they related to the statements of an eyewitness observation of what Stephens said about his physical condition directly after removing the ram cylinders from the CHRIS PIKE. However, these additional deposition transcript pages were never produced to the Court and are not properly considered here.

> A. No, sir.
> . . . .
> Q. Did you *feel* any pain in your back or groin after you finished helping the mechanic put his tools on the boat?
> A. No, sir.
> Q. After you finished helping the mechanic get his tools on the boat, what is the next physical activity you did?
> A. Removing the hydraulic cylinder.
> Q. And let's break that down. Is there some nuts, bolts, connections you have to undo to get that off?
> A. There's two hydraulic lines and two pins.
> . . . .
> Q. And then in the process of removing the lines and pins, did you *feel* any pain in your back?
> A. No, sir.
> Q. Did you *feel* any pain in your groin?
> A. No, sir.
> . . . .
> Q. Okay. So the first movement of the hydraulic cylinder, the first time you pick it up and take it out of where the grating is --
> A. You're going on top of the grating.
> Q. Did you *hurt* your back during that movement?
> A. No, sir.
> Q. Did you *hurt* your groin during that movement?
> A. No, sir.
> Q. So the next movement would be using the rags to carry it from on top of the grating to where?
> A. To his truck.
> Q. His truck. Well, do you --
> A. Well, to go from the deck -- we would go from the deck to up on the dock.
> Q. Right. got you. From moving that hydraulic cylinder from the deck to the dock, did you *hurt* your back then?
> A. No, sir.
> Q. Did you *hurt* your groin then?
> A. No, sir.
> . . . .
> Q. And during the process of moving that hydraulic cylinder from the dock to the bed of the truck, the mechanic's truck, did you *hurt* your back at that point?
> A. Not -- no, sir, not to my knowledge at that point in time. No.
> Q. Did you *hurt* your groin at that point?
> A. No, sir.
> . . . .

(R. Doc. 22-1, pp. 5-25) (emphasis added). This pattern of explicit questioning continued during a discussion of the removal of the next three cylinders from the CHRIS PIKE:[5]

> Q. Did you *hurt* yourself carrying the new [cylinder] from the bed of the truck onto the boat?

[5]Stephens testified that only three cylinders were moved manually, and that a crane was used to move the fourth. (R. Doc. 22-1, p. 26).

A. No, sir.
. . . .
Q. Do you *remember if you hurt* your back removing the starboard side hydraulic cylinder?
A. No, sir.
. . . .
Q. Did you *hurt* yourself when you were moving the new starboard cylinder from the bed of the truck onto the boat?
A. No, sir.
. . . .
Q. Did you *hurt* yourself carrying the broken starboard cylinder from the dock to [the] bed of the mechanic's truck?
A. No, sir.
. . . .
Q. Do you *remember if you hurt* your back installing the grating?
A. No, sir.
. . . .
Q. Do you *remember if you hurt* your back bolting down the grating?
A. No, sir.
. . . .

(R. Doc. 22-1, pp. 25-31) (emphasis added).[6]

In this case, the questions posed to Stephens do not unambiguously resolve the issue of whether he actually experienced pain during the process of removing the ram cylinders from the CHRIS PIKE, or the type of pain he actually experienced at specific times.

As to removal of the first hydraulic cylinder, Florida's questions posed are predominately posed to ascertain whether Stephens *actually* experienced pain - i.e., when Stephens "pick[ed] things up and mov[ed] them off the grates," "while using the ratchet to loosen the bolts," during "the process of walking from the back grating to where you met the mechanic after you finished helping the mechanic put his tools on the boat." However, on two occasions Stephens is asked whether he *remembers* whether he experienced pain: first, whether he remembers "any pain" when removing the metal grate which covered the cylinders, and second, whether he remembers if he "hurt" his back when "installing" the grating, which in context means "re-installing." (R. Doc. 22-1, p. 29).[7] Whether Stephens sustained an injury during the grate removal and re-installation process clearly

[6]Stephens' testimony also contains the question "Do you *remember* if you hurt your back carrying the [mechanic's] tools from the boat to the bed of the truck," to which Stephens responded, "No, sir." (R. Doc. 22-1, p. 31).

[7]Just before posting the question which used the phrase "installing," Stephens had been asked, "[d]id you reinstall the grating . . . before you carried the starboard cylinder?" (R. Doc. 22-1, p. 29).

remains at issue. Moreover, Stephens also explicitly stated that, to his *knowledge* he did not hurt his *back* when carrying the cylinder to from the CHRIS PIKE to the mechanic's truck, even though in the next question, Stephens explicitly denies that he hurt his *groin* at that time. (R. Doc. 22-1, p. 25).

There is a palpable distinction between admitting that pain was actually "felt" or "experienced," and merely "remembering" that paid had been felt. This is especially pertinent here, because Stephens only experienced pain for the first time after completing of the removal and re-installation of the hydraulic cylinders, and could not identify any "specific activity" and "specific timeframe" as the cause of his *back* injuries:[8]

> Q. Okay. When was the first time you felt pain in your back?
> A. When I laid down.
> Q. When you laid down to go to sleep?
> A. When I laid down to go to sleep, that's when it hit me.
> . . . .
> Q. . . . [T]here's no sone specific activity that you can identify where you think you hurt your back.
> A. Not in that predicament, no, sir. That was the heaviest thing I picked up when I was out there. And like I said, picking something up like that puts a strain on you regardless of how you try to do it.
> Q. . . . [T]here's no specific timeframe where you can say, 'oh, it was that lift that hurt my back?
> A. I couldn't tell you exactly at what point it actually did it, no, sir.

(R. Doc. 22-1, pp. 33-35).

Because of the material ambiguities in Stephens' deposition testimony, the Court ordered Florida to produce pictures of the back deck of the CHRIS PIKE so that it could better determine Stephens' entitlement to conduct a physical inspection of the vessel. Following oral argument, Florida duly submitted by manual attachment 63 digital color photographs of the back deck of the CHRIS PIKE for the Court's review. (R. Docs. 28, 29). The pictures which Stephens has submitted show that the grating is comprised of several rectangular sections, with a length of approximately seven feet and a width of approximately two feet. Even without testimony regarding the relative weight of the grating, it is clearly plausible that lifting or moving the metal grating contributed to

[8]All three questions did not reach the issue of Stephens' *groin* injuries, which Florida conceded at oral argument.

his injuries. As such, physical inspection of the grating is reasonably calculated to lead to the discovery of admissible evidence regarding the source of Stephens' injuries, if any.

**2. Physical Inspection of Cylinders**

In support of his motion, Stephens' written submission also argues that in addition to inspecting the location of the cylinders on the CHRIS PIKE, he should also be allowed to inspect the cylinders themselves. (R. Doc. 21-1, p. 3).

In opposition, Florida argues that Stephens' proposed vessel inspection would be unreasonably cumulative because additional hydraulic ram cylinders of the same make and model are available elsewhere. (R. Doc. 22, p. 6). Florida argues that it has "attempted to cooperate . . . and offered to assist in scheduling an inspection of an identical hydraulic ram." *Id.* at 3. Florida argues that this alternative discovery is allowable here because regardless of whether Stephens is entitled to inspect the cylinders to ascertain their weight and the location of any hand-holds, the specific cylinders on the CHRIS PIKE cannot be inspected "while the hydraulic ram is a working part of the vessel." *Id.* at 6. In order to inspect the specific cylinders on the CHRIS PIKE, Florida argues that the vessel will have to be taken out of commission for half a day; and because the burden of the proposed discovery plainly outweighs its potential benefit, Florida argues that the discovery should be denied.

Stephens reiterated his willingness to facilitate inspection of a hydraulic cylinder of the same make and model which was located in a yard in Harvey, Louisiana; however, he admitted that this cylinder had never been installed on the CHRIS PIKE. He also stated that he could not represent that the cylinder currently installed on the CHRIS PIKE was in fact the same cylinder that had been installed at the time of the incident in question.

The Court notes that the ambiguities in Stephens' testimony extend to issues involving the weight of the cylinders, as Stephens was asked, *inter alia*, whether he "remembers" experiencing pain while carrying the cylinder to the mechanic's truck. Therefore, the weight of the cylinders clearly remains at issue, and physical inspection of the cylinders is reasonably calculated to lead to the discovery of admissible evidence.

Moreover, Florida's alternative accommodation - to allow inspection of a cylinder of the same make and model as that removed from the CHRIS PIKE - would leave the issue of physical inspection of the metal grating unanswered. Moreover, because the ambiguity surrounding Stephens' injuries extends to the removal, re-installation, and bolting down of the grating, allowing Stephens to remove one of the CHRIS PIKE's hydraulic cylinders at the same time as the grating inspection occurs will not be unduly burdensome, as both the metal grating and the cylinder are "working parts" of the vessel.

Florida is ordered to produce the CHRIS PIKE for Stephens' physical inspection no later than twenty (20) days after the issuance of this Order, so that Stephens may inspect the ship's hydraulic cylinders and the aft grating.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Ricky Stephens, ("Stephens") **Motion to Compel Vessel Inspection (R. Doc. 21)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Florida is ordered to produce the CHRIS PIKE for Stephens' physical inspection **no later than twenty (20) days** after the issuance of this Order, so that Stephens may inspect the ship's hydraulic cylinders and the aft grating.

New Orleans, Louisiana, this 17th day of June 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**