UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


RICKY STEPHENS                                                    CIVIL ACTION

VERSUS                                                            NO: 12-1873

FLORIDA MARINE TRANSPORTERS, INC.                                 SECTION: "H"(4)


ORDER AND REASONS

Before the Court is a Motion *in Limine* to Exclude Evidence Concerning Set Off (R. Doc. 83) and a Motion *in Limine* to Exclude Evidence Regarding Use of a Crane (R. Doc. 94). For the following reasons, the Motions are GRANTED IN PART.[1]

---

[1] The Court previously ruled in a status conference that the Motion *in Limine* to Exclude Evidence Concerning Set Off was granted in full. The Court hereby exercises its authority to modify an interlocutory order and grants the Motion only in part, as explained more fully *infra*. *See United States v. Randa*, 709 F.3d 472, 479 (5th Cir. 2013) ("Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order for any reason it deems sufficient.") (internal quotation marks and citation omitted). The Court may exercise this authority *sua sponte*. *See McKethan v. Texas Farm Bureau*, 996 F.2d 734, 736 n.6 (5th Cir. 1993) (approving district court's *sua sponte* reversal of a denial of partial summary judgment).

1

**BACKGROUND**

This is a diversity action brought by Plaintiff Ricky Stephens against his employer, Defendant Florida Marine Transporters, Inc.  Plaintiff seeks damages for injuries allegedly sustained while employed as a deckhand aboard the M/V CHRIS PIKE—a vessel owned and operated by Defendant.  The facts of this matter are detailed in this Court's previous Orders.

On September 4, 2013, the Court ruled on the instant Motions.  The Court now issues written reasons.

**LAW AND ANALYSIS**

I.  <u>Motion *in Limine* to Exclude Evidence Concerning Set Off</u>

Plaintiff argues that payments received pursuant to a long-term disability plan (the "Plan") should not set off any potential damage award for maintenance and cure, unseaworthiness, or Jones Act negligence.  Accordingly, Plaintiff moves this Court *in limine* to exclude any evidence relating to payments received under the Plan.  For the following reasons, the motion is granted in part.

A.  *Damages for Jones Act Negligence and Unseaworthiness—the Collateral Source Rule*

The collateral source rule bars a tortfeasor from reducing the damages it owes to a plaintiff "by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor."  *Davis v. Odeco, Inc.*, 28 F.3d 1237, 1243 (5th Cir.

2

1994) (citation omitted).  The rule ensures that a tortfeasor does not take advantage of streams of income that are otherwise available to a tort victim.  *Nelon v. Cenac Towing Co., LLC*, No. 10–373, 2011 WL 289040, at *17 (E.D. La. Jan. 25, 2011) (citations omitted).   "Married to this substantive rule is an evidentiary rule that proscribes introduction of evidence of collateral benefits."  *Davis*, 18 F.3d at 1243 (citation omitted).  The main purpose of this exclusionary rule is to shield the jury from potentially prejudicial information about a plaintiff's outside sources of income. *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930 (5th Cir. 1992); *accord Davis*, 18 F.3d at 1243 (citation omitted).  The jury may feel that a damages award would "overcompensate the plaintiff for his injury . . . and may factor this into the liability calculus."  *Phillips*, 953 F.2d at 930.

"In most cases, identifying income subject to the collateral source rule is not a difficult task." *Id.*  For example, insurance policies and others forms of protection funded solely by a plaintiff are clearly independent of the tortfeasor. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 305 (5th Cir. 2008) (citation omitted). But where, as here, an employer-tortfeasor funds a benefit plan, the analysis is considerably more nuanced.  *Id.* (citation omitted).   The dispositive inquiry is whether the benefit is "intended to respond to potential future legal liability," *Phillips*, 953 F.3d at 932, or instead is a fringe benefit offered as additional compensation for employment.  *Davis*, 18 F.3d at 1244.  The *Phillips* Court identified several non-exclusive factors that courts may consider in making this inquiry:

> (1) whether the employee contributes to the plan, (2) whether the benefit plan stems from a collective bargaining agreement, (3) whether the plan covers both work-related and nonwork-related injuries, (4) whether payments under the plan correlate with the employee's length of service, and (5) whether the plan contains specific language requiring that benefits received under the plan be set-off against a judgment adverse to the tortfeasor.

*Davis*, 18. F.3d at 1244 (citing *Phillips*, 953 F.2d at 932). "These factors must not, however, be applied woodenly." *Davis*, 18 F.3d at 1244. The court should undertake an overall examination of the benefit plan to determine whether it was established "as a prophylactic measure against liability." *Id.*; *Nelon*, 2011 WL 289040, at *18.

Having closely examined the Plan, the Court concludes that benefits received thereunder arise from a collateral source. To be sure, two of the *Phillips* factors militate against this conclusion: the Plan is fully funded by Defendant, and there is no evidence that the Plan arose from any individual or collective bargaining. The Fifth Circuit has cautioned, however, that "[a]pplication of the collateral source rule depends less upon the source of funds than upon the character of the benefits received." *Haughton v. Blackships, Inc.*, 462 F.3d 788, 790 (5th Cir. 1972) (citation omitted); *accord Phillips*, 953 F.2d at 931. The remaining three factors strongly suggest that Defendant did not adopt the Plan to indemnify itself against liability. The Plan does not distinguish between work-related or non-work related injury. Moreover, the Plan provides that an employee "may need to work" for a "continuous period" before the employee is eligible for benefits. Thus, benefits may depend in part on an employee's length of service. Finally, and most importantly,

there is no provision that allows benefits received to be set off against a judgment adverse to Defendant.  *See Nelon*, 2011 WL 289040, at *17–18 (finding lack of set off provision particularly important).  Given the foregoing, the *Phillips* factors strongly suggest the Plan was adopted as a fringe benefit, and not a form of indemnification.  *See id.* (characterizing similar plan as collateral source).  Accordingly, Defendant is not entitled to set off, nor to present evidence concerning benefits received under the Plan.

B. *Maintenance and Cure Benefits*

A seaman who becomes sick or injured during his service to the ship is entitled to maintenance and cure.  *Cooper v. Diamond M Co.*, 799 F.2d 176, 178–79 (5th Cir. 1986) (citations omitted).  "Maintenance" encompasses a seaman's living expenses, while "cure" covers payment of medical or therapeutic treatment.  *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) (citations omitted).  The right to maintenance and cure exists independent of tort law.  *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (citations omitted). Because the collateral source rule is a creature of tort law, it is not "strictly applied" to awards for maintenance and cure.  *Gauthier v. Crosby Marine Serv., Inc.*, 752 F.2d 1085, 1089 (5th Cir. 1985) (citations omitted).

Assuming *arguendo* that Plaintiff may not avail himself of the collateral source rule, the Court next inquires whether maintenance payments by Defendant should be set off against payments received by Plaintiff under the Plan.  The Fifth Circuit has consistently held that seamen "may recover maintenance and cure only for those expenses 'actually incurred.'"  *Manderson v.*

5

*Chet Morrison Contractors, Inc.*, 66 F.3d 373, 382 (5th Cir. 2012) (collecting cases). An injured seaman does not incur expenses for maintenance and cure to the extent such expenses are defrayed through an insurance plan funded by his shipowner-employer. Thus, the shipowner should be entitled to set off from its maintenance and cure obligation that portion of the insurance benefits furnished at no expense to the seaman.[2] *See* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6–32 (5th ed. 2012) ("If both the seaman and his employer have paid the premiums, there will be a set-off in proportion to the employer's contribution."); *Baum v. Transworld Drilling Co.*, 612 F. Supp. 1555, 1556 (W.D. La. 1985) (citations omitted). On the other hand, where a seaman alone has purchased the benefits, the shipowner is not entitled to set off. *See Gauthier*, 752 F.3d at 1090. This follows because the seaman has actually incurred expenses—the payment of insurance premiums. *See id.* Moreover, allowing set off would be inimical to the policy of protecting injured seamen: it would allow a shipowner to "delay[] maintenance and cure payments in order to force [the seaman] to look first to [his] private insurer." *Id.*

It is undisputed that the Plan in this case is funded solely by Defendant. Thus, it would appear that Defendant should be entitled to set off against its maintenance obligation the aggregate amount of benefits extended to Plaintiff under the Plan. Plaintiff argues that this would

---

[2] For example, if a plaintiff receives $10,000 in benefits through a plan that is 70% funded by the defendant, the defendant is entitled to set off $7,000 from its maintenance and cure obligation. Similarly, if the plan is entirely funded by the defendant, the entire $10,000 should be set off.

6

be unfair because the Plan allows the insurer to set off benefits against maintenance payments received by the insured. In Plaintiff's own words, "it impossible that defendant and the disability insurer *both* be allowed offset against payments made by the other." (R. Doc. 117) (emphasis added).

Plaintiff is mistaken that the Plan allows the insurer to set off maintenance payments received by Plaintiff. The Plan allows benefits to be reduced by "deductible sources of income." One such source is "[t]he amount [the insurer] receives under the maritime doctrine of maintenance, wages and cure. This includes *only the 'wages'* part of such benefits." (R. Doc. 117-2 at ¶6) (emphasis added). The law is clear in the Fifth Circuit that "[m]aintenance is neither a substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part."[3] *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 378 (5th Cir. 1989) (internal quotation marks and citation omitted). Rather, the doctrine of maintenance covers a seaman's right to receive "food and lodging of the kind and quality he would have received aboard the ship." *Boudreaux*, 280 F.3d

---

[3] Lost wages is more properly considered an element of general damages under the Jones Act and general maritime law. *See Colburn*, 883 F.2d at 378 ("[A]n award of maintenance by the trial court in addition to a general damage award that includes past and future wages is proper."*); Martinez v. Offshore Speciality Fabricators, Inc.*, No. 08–4224, 2011 WL 1527096, at *8 (E.D. La. Apr. 20, 2011) (calculating wage loss separately from maintenance and cure). As such, lost wages are subject to the collateral source rule which, in this case, prohibits set off by the Defendant. Moreover, allowing set off would lead to an inequitable "double loss:" amounts would be deducted from Plaintiff's damages award and then Plaintiff may have to reimburse his lost wages to the third-party insurer. *See Trico Marine Assets Inc. v. Diamond B Marine Servs., Inc.*, 332 F.3d 779, 795 n.9 (5th Cir. 2003). And even if Plaintiff did not have to reimburese the insurer, set off would impermissibly "punish [Plaintiff] for having the foresight to establish and maintain collateral sources of income." *Id.* at 795.

at 468 (citing *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 586 (5th Cir. 2001)). Because the Plan clearly does not permit the insurer to deduct for food and lodging, there is no possibility of a "double set off." And given that the Plan is fully funded by Defendant, Plaintiff has not incurred expenses for maintenance. Accordingly, Defendant is entitled to set off.

Defendant's failure to plead set off as an affirmative defense does not compel a different conclusion.[4] Affirmative defenses must be set forth in a defendant's responsive pleading. Fed. R. Civ. P. 8(c). "Failure to follow this rule generally results in a waiver." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) (per curiam) (citation omitted). If, however, the defense is raised at a "pragmatically sufficient time" and the plaintiff is not prejudiced in its ability to respond, the defense is preserved. *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (internal quotation marks and citation omitted).

Defendant first raised the affirmative defense of set off in a joint pre-trial order filed on July 23, 2013. Plaintiff filed the instant Motion concerning set off on August 2, 2013. The Court heard oral argument on August 15, 2013. Trial is currently set for September 23, 2013.

The record is clear that Plaintiff was afforded a sufficient opportunity to oppose Defendant's set off defense. Indeed, Plaintiff availed himself of this opportunity by filing the instant Motion. Thus, Plaintiff suffered no prejudice by the absence of a formal assertion in the initial responsive

---

[4] Set off is an affirmative defense in the Fifth Circuit. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 n.36 (5th Cir. 2001).

8

pleading. This conclusion finds ample support in the jurisprudence. *See, e.g.*, *Giles*, 245 F.3d at 494–95 (finding no waiver of set off where plaintiff raised the issue in a pre-trial motion *in limine* and defendant responded thereto); *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (finding no waiver of set off where "both parties addressed the issue in their pre-trial motions *in limine*"); *Mackay*, 695 F.2d at 855–86 (finding no waiver of usury defense raised for the first time in the court's pre-trial order).

Although Defendant is entitled to set off with respect to its maintenance obligation, it does not follow that Defendant may introduce evidence of Plan benefits. Allowing such evidence to be published to the jury would circumvent the rule proscribing the introduction of evidence of collateral benefits. Thus, should the jury find that Plaintiff is owed maintenance, the Court will perform the necessary set off calculation.

II.     Motion *in Limine* to Exclude Testimony Regarding Use of a Crane

"The essential prerequisite of admissibility is relevance." *United States v. Hall*, 653 F.3d 1002, 1005 (5th Cir. 1981). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether a fact is of consequence is a question governed by the substantive law applicable to the case. *Hall*, 653 F.2d at 1005.

"A district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury.'"

9

*Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013) (alterations in original) (quoting Fed. R. Evid. 403). Because Rule 403 "is an extraordinary measure [that] permits a trial court to exclude concededly probative evidence . . . it should be used sparingly." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 456–57 (5th Cir. 2009) (first alteration in original) (internal quotation marks and citation omitted). The Rule's purpose is "to exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Baker v. Canadian Nat'l/Illinois Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (internal quotation marks and citation omitted).

Defendant moves this Court *in limine* to exclude all testimony pertaining to the use of a crane. The Court finds such testimony relevant because it tends to make facts of consequence—namely, whether Defendant provided a reasonably safe place to work or a vessel reasonably fit for its intended use—more or less probable. Plaintiff alleged injury during the course of manually lifting hydraulic cylinders. Thus, the availability and use of a crane to move hydraudlic cylinders, both in the past and on the date of the accident, is something the jury should be allowed to consider in determining liability. Defendant's argument that the testimony of Dean Phillips (a relief captain for Defendant) is not relevant because he cannot recall the dimensions or size of cylinders lifted in the past goes more to the weight of the evidence than its admissibility.

Furthermore, the Court does not find the relevance of the challenged evidence substantially outweighed by any of the factors enumerated in Rule 403. Defendant's argument that the jury will be "confused or misled into believing that a crane must or should have been used" places too little

10

faith in our adversarial system and the role of the jury within that system.  *Cf. United States v. Booker*, 543 U.S. 220, 289 (2005) ("We have always trusted juries to sort through complex facts in various areas of law.") (Stevens, J., dissenting).  Moreover, Rule 403 is not the proper vehicle for challenging probative evidence that is merely damaging—but not unduly prejudicial—to a party's case.  *See Baker*, 536 F.3d at 369 ("Rule 403 is not designed to 'even out' the weight of the evidence.") (footnote omitted).

   Defendant also moves to exclude any testimony from Plaintiff that use of a crane would have prevented his injury.[5]  Such testimony is not rationally connected to Plaintiff's perceptions, would not be helpful to the jury, and would necessarily be based on specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  Accordingly, Plaintiff may not offer a lay opinion as to causation.

**CONCLUSION**

For the reasons previously stated, the Motion *in Limine* to Exclude Evidence Concerning Set Off is GRANTED IN PART.  Because the Plan is a collateral source of income, Defendant is not entitled to set off Plan benefits against any damage award for Jones Act negligence or unseaworthiness. Accordingly, evidence of Plan benefits is inadmissible. Defendant may, however,

---

[5] Plaintiff has since clarified that he does not intend to offer such testimony.

11

set off payments received under the Plan against its maintenance obligation. Should the jury return a verdict in favor of Plaintiff, the Court will calculate the amount of set off, if any, to be factored into the final judgment. The Court will provide further instruction at a later time.

The Motion *in Limine* to Exclude Testimony Concerning Use of a Crane is GRANTED IN PART. Plaintiff may elicit testimony concerning the prior use and availability of a crane in lifting hydraulic cylinders. Plaintiff may not, however, opine that use of a crane would have prevented his injuries.

New Orleans, Louisiana, this 16th day of September, 2013.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**